SAUM et al., Appellees,

v.

MOENTER, Appellant.

[Cite as *Saum v. Moenter* (1995), 101 Ohio App.3d 48.]

Court of Appeals of Ohio,
Third District, Van Wert County.

No. 15–94–9.

Decided Feb. 8, 1995.

*Hatcher, Diller, Rice & Beebe* and *W. Edward Hatcher*, for appellees.
*Mark J. Ebbeskotte*, for appellant.

HADLEY, Judge.

Defendant-appellant, Michael Moenter, appeals from a judgment entry of the Van Wert County Municipal Court. The trial court awarded plaintiffs-appellees, Gerald and Annabelle Saum, $4,074.73 and interest of $238.90 with the ten percent statutory interest to apply. The trial court found that a check given to appellees' daughter, Cynthia Moenter, prior to her marriage to appellant, was a loan which directly benefited appellant by enabling the couple to obtain the necessary financing to build a home.

The record indicates that appellant and Cynthia started building a house in the summer of 1986, prior to the couple's marriage in June 1987. In order to build, the couple applied jointly for a loan; however, the bank required the couple to tender some "up-front" money. There was testimony that appellant asked his parents to lend the couple money, but they were in no position to do so. Cynthia then approached her parents regarding the money.[1] As a result, Mrs. Saum gave Cynthia a check, dated May 3, 1986, for $12,775.73.[2] Upon doing so, Mrs. Saum testified that the couple could pay them back "whenever they had the money" but that appellant and Cynthia would have to pay interest each month.[3] Subsequently, in the presence of appellant, Cynthia endorsed the check to the bank and it was deposited in an escrow account.[4] The account's proceeds were then used to pay expenses for building the house.

---

1. There is conflicting testimony as to whether appellant was present when Mrs. Saum and Cynthia were discussing the terms for obtaining the money, although Mrs. Saum indicated that only Cynthia was present.

2. The check was payable only to Cynthia.

3. Mrs. Saum stated that "we would only charge them half interest." According to testimony, this would amount to six percent.

4. Apparently, the loan proceeds would then be added to this escrow account.

The record further indicates that appellant and Cynthia had a joint checking account. Checks were drawn on this account to reimburse appellees for the loan. Appellant testified that he, personally, wrote no checks to appellees, but he had knowledge that Cynthia was making such payments from their joint account. Upon receiving the payments, Mrs. Saum recorded the dates of the payments and amounts paid on the interest and the principal. Her records demonstrate that money was paid to appellees from 1986 to 1992.

Appellant and Cynthia were subsequently divorced in March 1993.[5] The house was auctioned in August 1993, debts were paid, and appellant and Cynthia divided the remaining proceeds. In September 1993, Cynthia paid her parents one-half of the remaining balance for the loan, a total of $4,149.73.

On November 3, 1993, appellees filed a complaint seeking the remaining balance due on the loan in the amount of $4,074.73. A trial was held on May 10, 1994. The trial court, in its judgment entry dated June 6, 1994, concluded that appellant became equally obligated on the loan when the check was presented at the bank and, furthermore, appellant benefited from the transaction to the detriment of appellees.

It is from this judgment entry, that appellant asserts the following assignments of error.

### Assignment of Error No. 1

"The trial court errored [sic] in holding that the appellant was liable to the appellees for money lent to the appellant's ex-wife who was the appellees' daughter before the appellant and his ex-wife were married."

Appellant asserts that he was not a party to any contract between appellees and Cynthia and that the lack of definite terms signifies that the check was a gift. He also appears to focus on the loan's premarital status and his liability due to his marriage to Cynthia. Furthermore, appellant contends that he never received or promised to repay any money.

An appellate court will uphold a trial court's judgment if there is "some competent, credible evidence * * * [to support] all the essential elements of the case." *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus.

We first address appellant's assertion that the surrounding circumstances of the case indicates that appellees intended to make a gift. To constitute a gift, there must be a donative intent. 52 Ohio Jurisprudence 3d

---

5. The couple's separation agreement states that property "not specifically set off" will be sold and provides that debts will be paid from the proceeds.

(1984), Gifts, Section 8. On the other hand, a " '[c]ontract' is [an] agreement upon sufficient consideration between two or more persons to do or not to do [a] particular thing." *Schlupe v. Ohio Dept. of Adm. Serv.* (1992), 78 Ohio App.3d 626, 605 N.E.2d 987, paragraph two of the syllabus. More specifically, to demonstrate that a transaction is a loan, the trial court may take into consideration the relationship of the parties and an individual's need for the loan. *Modica v. Keith* (Feb. 28, 1985), Cuyahoga App. No. 48649, unreported, 1985 WL 6630, citing *Cook Org., Inc. v. Nightingale* (1928), 6 Ohio Law Abs. 737; 18 Ohio Jurisprudence 3d (1980), Contracts, Section 347. In addition, the trial court can deliberate "whether in view of their relations a loan might be made without being evidenced by a note and any other incidents that would enable one to infer that the transaction constituted a loan or did not." *Modica, supra.*

■ In the case *sub judice*, the record shows that appellees and Cynthia entered into such an agreement. Appellees gave Cynthia a check in order that appellant and Cynthia could obtain a building loan. Cynthia agreed to make monthly interest payments, as well as pay on the principal whenever the couple had the extra money.[6] Thus, we agree that this transaction constituted a loan.

■ Next, it is clear from the trial court's holding that appellant's liability is not based on his marital status, but on his acknowledgement and retention of benefits as well as his assent to the payments made to appellees.

■ Appellant's contention that he was not a party to the loan agreement and, therefore, should not be liable, is also rejected. As stated in *Reno v. Clark* (1986), 33 Ohio App.3d 41, 43, 514 N.E.2d 456, 458: "[a] third-party beneficiary is one for whose benefit a promise is made in a contract, but who is not a party to the contract." A party must intend that a third party benefit from a contract; otherwise, the party is simply an incidental beneficiary. *Laverick v. Children's Hosp. Med. Ctr. of Akron* (1988), 43 Ohio App.3d 201, 540 N.E.2d 305, paragraph two of the syllabus. Furthermore, "by accepting the benefits of [the] * * * contract * * *, a third person assumes the burdens." 18 Ohio Jurisprudence 3d (1980), Contracts, Section 181.

There is evidence which illustrates appellees' intentions of lending money to the couple. Although, the check was payable only to Cynthia, Mrs. Saum testified that this was done as a precaution in case appellant and Cynthia decided not to marry. In addition, the check memo line reads "loan on house." Mrs. Saum stated that "we agreed we'd lend *them* the money." (Emphasis added.) Without

---

**6.** We note that this contract fails to fall within the purview of R.C. 1335.05, which requires contracts which will "not * * * be performed within one year from the making" to be in writing. Although it may be unlikely, it was possible for the loan to be repaid within one year. *Cummings v. Groszko* (1992), 76 Ohio App.3d 812, 603 N.E.2d 387, paragraph three of the syllabus.

this money, the couple would have been unable to obtain the necessary financing. Thus, the singular objective of the check was to enable appellant and Cynthia to acquire a building loan.

The record also demonstrates that appellant accepted the benefits from the check. Appellant was present when the check was deposited into an escrow account, which had the sole purpose of paying building expenses. Moreover, the account was, in fact, utilized for just that purpose. Additionally, appellant was aware of the payments made to appellees from the couple's joint checking account.

In summary, we find evidence to support the trial court's findings that the transaction was a loan, with the intention of being used to enable appellant and Cynthia to acquire financing to build the couple's home and was actually expended for that objective. The record further supports the trial court's conclusions that appellant was present when the check was delivered to the bank and had knowledge of the subsequent payments to appellees. As summarized by the trial court, appellant clearly accepted the benefits of the transaction and, based on the record, became equally obligated.[7]

Appellant's first assignment of error is overruled.

### Assignment of Error No. 2

"The trial court abused its discretion in holding that the appellant was obligated to the terms of a contract between the appellees and the appellant's ex-wife [where] the appellant was neither a party to the contract nor agreed to any terms of the contract."

In this assignment of error, appellant contends that the trial court abused its discretion in holding him liable for terms of a contract for which he had no opportunity to negotiate. Appellant makes specific reference to the ten percent statutory interest imposed by the trial court as well as stating that appellees have already been reimbursed beyond the total sum of the check.

When reviewing a trial court's judgment for abuse of discretion, the appellate court must determine whether the judgment is "unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142.

It is well recognized that an injured party is entitled to the amount of pecuniary loss which resulted from a breach of contract. 30 Ohio Jurisprudence

---

7. Nonetheless, even if appellant lacked third-party beneficiary status, appellees would still be entitled to the money because of the benefit bestowed upon appellant. Appellees' entitlement would result from quasi-contract liability, which is based " 'upon the fundamental principle of justice that no one ought unjustly to enrich himself at the expense of another.' " *Hummel v. Hummel* (1938), 133 Ohio St. 520, 527, 11 O.O. 221, 224, 14 N.E.2d 923, 926.

3d (1981), Damages, Section 1. R.C. 1343.03(A) provides, in pertinent part, that "when money becomes due * * * upon all verbal contracts entered into, and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of * * * a contract or other transaction, the creditor is entitled to interest at the rate of ten per cent per annum, and no more, unless a written contract provides a different rate of interest * * *."

Initially, we again find, as discussed in appellant's first assignment of error, that appellant, by accepting the benefits of the loan, also assumed the burdens. Likewise, appellant was fully aware of the interest and principal payments made to appellees.

With regard to the interest rate, since the agreement in the instant case was oral and a judgment for money derived from a contract, the trial court was correct in applying the ten percent statutory interest pursuant to R.C. 1343.03(A). Finally, the record includes appellees' records on the balance owed on the loan.[8]

Based on the record, we cannot find that the trial court abused its discretion. Appellant's second assignment of error is overruled.

Having found no error prejudicial to appellant, the judgment of the Van Wert County Municipal Court is affirmed.

*Judgment affirmed.*

SHAW, P.J., and THOMAS F. BRYANT, J., concur.

---

8. It is apparent that a loan for approximately $12,775 plus interest would result in reimbursement well over the original amount.