OPINION *Page 2 
{¶ 1} The defendant-appellant, Dianna Disbennett, also known as Diane Disbennett, appeals the decision of the Marion County Municipal Court ordering her to pay $10,000 plus interest to the plaintiff-appellee, Robert Adams. On appeal, Disbennett argues that Adams did not prove his case by a preponderance of the evidence; that the trial court erred in finding the statute of frauds inapplicable; that the trial court erred by using the preponderance of the evidence standard as it relates to the statute of frauds defense; that the trial court erred by admitting hearsay; and that the trial court erred by admitting unauthenticated and unreliable trial exhibits.
 {¶ 2} The basic facts of the case are undisputed. Sometime during the summer of 2005, the parties met through Match.com, an online dating service. At that time, Disbennett had litigation pending against her former employer for injuries she allegedly sustained in the course of her employment, and she was purchasing a residence from her sister through a land contract. However, she had fallen behind on her payments, and her sister requested a final payoff of $10,000. Disbennett obtained the money from Adams and received a deed to the home from her sister. Sometime in December 2005, Adams purchased a new window for the home. By January 2006, the parties had essentially ended their relationship. *Page 3 
 {¶ 3} On August 23, 2006, Adams filed a complaint, alleging that he had made three loans totaling $11,181 to Disbennett. Adams alleged that each loan was made pursuant to an oral contract of repayment. Adams alleged one claim of breach of contract, one claim of quantum meruit, and one claim of unjust enrichment. Disbennett filed her answer on September 22, 2006, claiming the money was given to her as a gift and asserting the statute of frauds as an affirmative defense.
 {¶ 4} On May 14, 2007, Disbennett filed a motion in limine seeking to exclude from introduction at trial several statements she had allegedly made to Adams on the Yahoo! Instant Messenger service ("IM"). On June 13, 2007, Adams filed a memorandum in opposition to Disbennett's motion, and Disbennett filed a supplemental memorandum on July 10, 2007. The court began a bench trial on that same day, and continued the second day of trial until October 22, 2007, on which date, the court heard testimony from an additional witness. The court continued trial again until January 28, 2008, at which time the remaining defense witness did not appear. The court heard closing arguments, and on February 22, 2008, rendered its decision. The court determined that Adams had proven the existence of an agreement for the $10,000 loan, but he had not proven that his purchase of a window for Disbennett's home constituted a loan. The court accordingly ordered Disbennett to pay $10,000 together with interest of eight-percent *Page 4 
per annum to Adams. Disbennett appeals the judgment of the trial court, raising five assignments of error for our review.
 Assignment of Error No. 1 The trial court erred in finding that the Plaintiff-Appellee had met his burden of proof by a preponderance of the evidence that there was an agreement between the Plaintiff-Appellee and Defendant-Appellant that the Defendant-Appellant agreed to pay the Plaintiff-Appellee back $10,000 as the manifest weight of the evidence fails to sustain Plaintiff-Appellee's burden.
 Assignment of Error No. 2 The trial court erred in finding that the statute of frauds rule did not apply and that the Plaintiff-Appellee to prevail on his claim did not have to have in writing the alleged agreement that the Defendant-Appellant had to pay back the Plaintiff-Appellee $10,000.
 Assignment of Error No. 3 The trial [c]ourt erred in finding that the statute of fraud defense of the Defendant-Appellant fails as the trial court used a preponderance of evidence standard instead of a clear and convincing evidence standard to determine that the oral contract was taken out of the operation of the statute of fraud.
 Assignment of Error No. 4 The trial [c]ourt erred in allowing testimony of the Plaintiff-Appell[ee]'s sister as to her "understanding" that the Plaintiff-Appellee wanted to loan money to the Defendant-Appellant until the Defendant-Appellant could get money to purchase the home as said testimony is based on inadmissible hearsay of the Plaintiff-Appellee. *Page 5 
 Assignment of Error No. 5 The trial [c]ourt erred in allowing the Plaintiff-Appellee to admit as evidence his exhibits D E which were copies of instant messaging allegedly between the parties.
 {¶ 5} For ease of analysis, we elect to address the assignments of error out of order, beginning with the fifth assignment of error, in which Disbennett argues the IM records were not authenticated pursuant to Evid. R. 901(A) nor corroborated by originals under Evid. R. 1001. In response, Adams claims the trial court did not abuse its discretion by admitting the exhibits. Adams contends the IM records were relevant to prove a loan; the probative value of the evidence "clearly outweighed" any unfair prejudice; the printouts should be considered originals pursuant to Evid. R. 1001(3); and the records were authenticated.
 {¶ 6} A trial court's decision to admit or exclude evidence is reviewed under an abuse of discretion standard. State v.McCullough, 3d Dist. No. 12-07-09, 2008-Ohio-3055, at ¶ 25, citingDeskins v. Cunningham, 3d Dist. No. 14-05-29, 2006-Ohio-2003, at ¶ 53, citing Huffman v. Hair Surgeon, Inc. (1985), 19 Ohio St.3d 83,482 N.E.2d 1248. An "`abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140, quoting State v. Adams (1980),62 Ohio St.2d 151, 157, 404 N.E.2d 144, internal citations omitted. *Page 6 
 {¶ 7} Evid. R. 901(A) provides: "[t]he requirement of an authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Evid. R. 902(B)(1) provides in pertinent part: "[b]y way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule: * * * Testimony that a matter is what it is claimed to be."
 {¶ 8} The trial court permitted Adams to authenticate the documents through his own testimony. See Johnson-Wooldridge v. Wooldridge (Jul. 26, 2001), 10th Dist. No. 00AP-1073, citing Kassouf v.White (Mar. 2, 2000), 8th Dist. No. 75446. During the hearing on the motion in limine, Adams testified that "Bob99HD" was his IM screenname, or his online identity; that "Diane Disbennett" was how her name came up on his computer even though her screennames were "sexybitch43302" and "mzz___dakota43302;" that he had not changed any of the messages; that Exhibit D was a print out of what he observed on his computer screen; and that Exhibit E was a compilation of messages from various dates, with each page representing a different day's conversation. (Trial Tr., May 23, 2008, at 13; 15; 33-35; 44). Adams also testified that the messages contained information that would have been private between himself and Disbennett. (Id. at 49). During Disbennett's testimony, she stated only that she *Page 7 
could not recall typing the messages Adams attributed to her, and that her computer was disposed of prior to the commencement of litigation. (Id. at 61; 64-65).
 {¶ 9} Although the following case from the Tenth Appellate District is not directly on point in that it concerns authentication of telephone calls rather than computer messages, it contains some useful general information concerning authentication under Evid. R. 901.
 "Thus, `[i]t is clear that the connection between a message (either oral or written) and its source may be established by circumstantial evidence.' * * * Moreover, `[a]ny combination of items of evidence illustrated by Rule 901(b) * * * will suffice so long as Rule 901(a) is satisfied.' * * * Finally, `[t]he burden of proof for authentication is slight.' * * * We have explained that[:]
 "`the showing of authenticity is not on a par with more technical evidentiary rules, such as hearsay exceptions, governing admissibility. Rather, there need be only a prima facie showing, to the court, of authenticity, not a full argument on admissibility. Once a prima facie case is made, the evidence goes to the jury and it is the jury who will ultimately determine the authenticity of the evidence, not the court. The only requirement is that there has been substantial evidence from which they could infer that the document was authentic.'" United States v. Reilly (C.A.3, 1994), 33 F.3d 1396, 1404, [internal quotations omitted].
State ex rel. Montgomery v. Villa (1995), 101 Ohio App.3d 478, 484-485,655 N.E.2d 1342. In alleging that the IM records introduced by Adams were not properly authenticated, Disbennett cites the following: *Page 8 
 "There are many states in the development of computer data where error can be introduced, which can adversely affect the accuracy and reliability of the out put * * * Determining what degree of foundation is appropriate in any given case is in the judgment of the court. The required foundation will vary not only with particular circumstances but also with the individual judge."
Lorraine v. Markel Amer. Ins. Co. (D. Md. 2007), 241 F.R.D. 534, 543, quoting Jack B. Weinstein Margaret A. Berger, Weinstein's Federal Evidence § 900.06[3] (Joseph M. McLaughlin ed., Matthew Bender 2d ed. 1997). Disbennett then provides a litany of possibilities as to why Exhibits D and E were not authenticated; however, the majority of those reasons are either unsupported by the record or simply contradicted by the testimony. The trial court was in the best position to observe the witnesses and assess credibility. Seasons Coal Co., Inc. v.Cleveland (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273. On this record, we cannot find the trial court abused its discretion when it authenticated Plaintiff's Exhibits D and E.
 {¶ 10} Disbennett also contends that Exhibits D and E were improperly admitted because they were not the "originals." Disbennett contends that Adams could have brought his computer's hard drive into court and retrieved the messages in open court. The Rules of Evidence do not impose such a burden upon a plaintiff. Evid. R. 1001(3) defines "original" as, "[a]n `original' of a writing or recording is the writing or recording itself or any counterpart intended to have the *Page 9 
same effect by a person executing or issuing it. * * * If data are stored in a computer or similar device, any printout or other output readable by sight, shown to reflect the data accurately, is an `original.'" At the hearing, Adams testified that his hard drive was in his car and was accessible. However, Adams hoped to prove his case by use of his exhibits, which were print-outs of information stored in the computer. Disbennett has cited no authority to support her proposition that Adams was required to produce the computer in court, and she has cited no authority to show that the print outs of information stored on Adams computer were not to be considered the "originals." On this record, we cannot hold that the trial court abused its discretion when it admitted Plaintiffs Exhibits D and E into evidence. The fifth assignment of error is overruled.
 {¶ 11} In the fourth assignment of error, Disbennett contends that the trial court erred by allowing inadmissible hearsay into evidence. At trial, Adams' sister, Martha Osbourne, testified that Adams asked her to loan him $10,000. Osbourne testified that she asked Adams why he needed the money, and she stated, "I understood that there was a house that was to be sold or bought by Diane — anyway, and that she was to — she was going to get a loan, but she needed money — he needed money until she could get the loan in her name." (Trial Tr., at 120:10-13). *Page 10 
 {¶ 12} Generally, "a written or oral out-of-court statement, offered into evidence to prove the truth of the matter asserted is considered inadmissible hearsay, unless the statement falls within a hearsay exception." McDermott v. McDermott, 6th Dist. No. F-02-023, 2003-Ohio-2361, at ¶ 19, citing Evid. R. 801, 802. "Evid. R. 803(3) provides that the following is excluded from the hearsay rule: `A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification or terms of declarant's will.'" Id. at ¶ 20.
 {¶ 13} As in McDermott, Osbourne's testimony merely indicates Adams' motive for seeking a loan from her. See Unifirst Corp. v. YusaCorp., 12th Dist. No. 08-25-2003, 2003-Ohio-4463, at ¶ 20. Furthermore, even if the trial court did err in allowing the testimony under Evid. R. 803(3), the error was non-prejudicial since the evidence was cumulative. Unifirst, at ¶ 21, citing McDermott, at ¶ 22, citing State v. Tomlinson (1986), 33 Ohio App.3d 278, 281,515 N.E.2d 963. Adams testified that he and Disbennett agreed that she would repay him the $10,000 she used to purchase her home. Adams also testified that Disbennett specifically told him she would repay the money. (Trial Tr., at 127). On this *Page 11 
record, we cannot find an abuse of discretion in the trial court's admission of Osbourne's statement. The fourth assignment of error is overruled.
 {¶ 14} In the first assignment of error, Disbennett contends the trial court erred in finding that Adams had met his burden of proof in proving the existence of a contract. A preponderance of the evidence means the greater weight of the evidence. Steingass Mechanical Contracting, Inc.v. Warrensville Heights Bd. of Educ, 151 Ohio App.3d 321, 2003-Ohio-28,784 N.E.2d 118, at ¶ 30, citing Travelers' Ins. Co. of HartfordConnecticut v. Gath (1928), 118 Ohio St. 257, 160 N.E. 710. To establish a breach of contract claim, the plaintiff must prove by a preponderance of the evidence that a contract existed; that the plaintiff completed performance; that the defendant failed to perform; and that the plaintiff was damaged by the defendant's failure to perform. BryanPublishing Co. v. Kuser, 3d Dist. No. 7-07-17, 2008-Ohio-2610, at ¶ 18, citing Farmers State Bank v. Followay, 9th Dist. No. 07CA0011, 2007-Ohio-6399, at ¶ 13, citing Lawrence v. Lorain Cty.Community College (1998), 127 Ohio App.3d 546, 548-49, 713 N.E.2d 478.
 {¶ 15} "To constitute a valid contract, there must be an offer on the one side and an acceptance on the other resulting in a meeting of the minds of the parties." Cramer v. Bucher, 3d Dist. No. 5-02-01, 2002-Ohio-3397, at ¶ 10, citing Noroski v. Fallet (1982),2 Ohio St.3d 77, 79, 442 N.E.2d 1302. *Page 12 
 To constitute a gift, there must be a donative intent. 52 Ohio Jurisprudence 3d (1984), Gifts, Section 8. On the other hand, a "`[c]ontract' is [an] agreement upon sufficient consideration between two or more persons to do or not to do [a] particular thing." Schlupe v. Ohio Dept. of Adm. Serv. (1992), 78 Ohio App.3d 626, 605 N.E.2d 987, paragraph two of the syllabus. More specifically, to demonstrate that a transaction is a loan, the trial court may take into consideration the relationship of the parties and an individual's need for the loan. Modica v. Keith (Feb. 28, 1985), Cuyahoga App. No. 48649, unreported, 1985 WL 6630, citing Cook Org., Inc. v. Nightingale (1928), 6 Ohio Law Abs. 737; 18 Ohio Jurisprudence 3d (1980), Contracts, Section 347. In addition, the trial court can deliberate "whether in view of their relations a loan might be made without being evidenced by a note and any other incidents that would enable one to infer that the transaction constituted a loan or did not." Modica, supra.
Saum v. Moenter (1995), 101 Ohio App.3d 48, 51-52, 654 N.E.2d 1333.
 {¶ 16} At trial, Osbourne testified that Adams sought a $10,000 loan from her because he believed he was going to loan the money to Disbennett. (Trial Tr., at 120). Adams testified on his own behalf and indicated that before he gave her the money, Disbennett specifically stated she would repay the money; that there was no time frame for repayment; that he did not get the loan in writing because he thought he could trust Disbennett; that the money he loaned her was partially from his savings and partially borrowed at 25% interest; that there were no witnesses to the discussion of the loan; and that he never wanted to marry Disbennett, though he had been interested in a long-term relationship. (Id. at 127-128; 131; 138; 142; 153). *Page 13 
 {¶ 17} Disbennett testified on her own behalf. Disbennett told the court that one night while Adams was at her home, she and Angel Byrd had a telephone conversation on the speakerphone. (Id. at 175). At that time, Byrd indicated that Disbennett's sister would sell her the house for $10,000. (Id.). Disbennett testified that Adams wanted to give her the money even though she told him she would be unable to obtain a loan; that Adams never asked her to repay anything; that Adams told her he would get the $10,000 for her because he loved her; and that Adams did not want his name on the deed until after they broke up. (Id. at 179; 181; 188; 190). Angel Byrd also testified for Disbennett. Byrd stated that Adams answered the phone the night she called Disbennett to relay the offer to purchase the home at $10,000, and the conversation was over the speakerphone because Disbennett was busy cooking. (Id. at 224). During that conversation, Byrd heard Adams tell Disbennett he would come up with the money because he did not want Disbennett on the streets. (Id. at 225-226). Byrd also stated that Disbennett told Adams she would be unable to repay the money. (Id. at 234-235). On cross-examination, Byrd admitted that Adams did not refer to the money as either a gift or a loan. (Id. at 233).
 {¶ 18} The court also had before it Plaintiffs Exhibits D and E. In Exhibit E, there was a message from "diane disbennett" on February 24, 2006 at 6:43 p.m., which stated, "i'm really sorry about the house i did try and when i get my *Page 14 
money you will get yours i'm using a friends computer so i got to go again i'm sorry." (Pl.'s Ex. E). Adams introduced this evidence to prove the existence of a loan. Even if we disregard the evidence in Plaintiff's Exhibit E, Adams' testimony alone is sufficient to establish the creation of a loan agreement between himself and Disbennett. While the court heard evidence to the contrary from the defense, the judge apparently placed greater weight on the testimony of the plaintiff.Seasons Coal Co. v. Cleveland, 10 Ohio St.3d at 80, 461 N.E.2d 1273. On this record, the trial court did not err in finding the existence of a loan agreement by a preponderance of the evidence. The first assignment of error is overruled.
 {¶ 19} For ease of analysis, we elect to consider the second and third assignments of error together. In her brief, Disbennett contends that the trial court used the clear and convincing evidence standard rather than the preponderance of the evidence standard in determining that the parties' oral agreement was outside the statute of frauds.
 {¶ 20} The statute of frauds is an affirmative defense. See generallyMarion Prod. Credit Assn. v. Cochran (1988), 40 Ohio St.3d 265, 269,533 N.E.2d 325; Naylor v. Lacy, 3d Dist. No. 7-02-01, 2002-Ohio-3392, at ¶ 6, citing Civ. R. 8(C). The statute of frauds may be found in R.C. 1335.05. At issue in this case is whether the parties' contract was unable to be performed within one year. *Page 15 
 Courts have a long history of giving the "not to be performed within one year" provision a literal and narrow construction. Sherman v. Haines (1995), 73 Ohio St.3d 125, 127, 652 N.E.2d 698. The Ohio Supreme Court summarized this in Sherman at 127, 652 N.E.2d 698 as follows:
 "The provision applies only to agreements which, by their terms, cannot be fully performed within a year; and not to agreements which may possibly be performed within a year, thus, where the time for performance under an agreement is indefinite, or is dependent upon a contingency which may or may not happen within a year, the agreement does not fall within the Statute of Frauds. (Citations omitted.)
 Further, the court relied upon 2 Corbin on Contracts (1950) 538-539, Section 444, for the proposition that:
 "`If a promise is so worded that it cannot be fully performed according to its own terms within one year, it is the kind of promise to which the one-year provision may be applicable. This may be so because the promise requires performance until a date more than a year away * * * or such a number of periodical performances as total more than a year. * * *'" Sherman at 129, 652 N.E.2d 698.
Long v. Agler (Jun. 8, 1999), 3d Dist. No. 15-98-19. In this case, despite Disbennett's testimony that the money was a gift, the evidence established that the parties did not set a time for repayment. Instead, repayment was conditioned upon Disbennett obtaining a subsequent mortgage on the property, [1] which removes the contract from the statute of frauds because the contract could be performed within one year. *Page 16 
 {¶ 21} Generally, a defendant must prove an affirmative defense by clear and convincing evidence. See In re Estate of Haas, 10th Dist. No. 07AP-512, 2007-Ohio-7011, at ¶ 43, quotingState v. Robinson (1976), 47 Ohio St.2d 103, 107, 351 N.E.2d 88 "[i]n a civil case, the plaintiff normally has the burden of producing evidence to support his case, and the defendant has the burden of producing evidence of any affirmative defenses"); Farris Disposal Inc. v.Leipply's Gasthaus, Inc., 9th Dist. No. 22569,2005-Ohio-6737, at ¶ 23, citing Sigma Sales, Co. v. dB Sales II,Inc. (May 27, 1998), 9th Dist. No. 18606. The trial court did not set forth which standard it used in determining that the contract was outside the statute of frauds, and even if the trial court mistakenly applied the preponderance of the evidence standard, Disbennett received the benefit of the court's supposed mistake and failed to capitalize upon the error. The second and third assignments of error are overruled.
 {¶ 22} The judgment of the Marion County Municipal Court is affirmed.
Judgment affirmed. PRESTON and ROGERS, J.J., concur.
[1] It appears that the parties also contemplated the settlement of Disbennett's personal injury lawsuit, which would have been a potential resource from which Disbennett could have repaid the loan. *Page 1