[Cite as *Three-C Body Shops, Inc. v. Nationwide Mut. Fire Ins. Co.*, 2017-Ohio-1462.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Three-C Body Shops, Inc., | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 16AP-748 |
| v. | : | (M.C. No. 2016 CVH 6250) |
| Nationwide Mutual Fire Insurance Co., | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on April 20, 2017

**On brief:** *Skinner & Associates, LLC, Todd A. Fichtenberg* and *Daniel J. Skinner*, for appellant. **Argued:** *Todd A. Fichtenberg.*

**On brief:** *Carpenter Lipps & Leland, LLP, Michael H. Carpenter* and *Joel E. Sechler,* for appellee. **Argued:** *Michael H. Carpenter.*

APPEAL from the Franklin County Municipal Court

HORTON, J.

{¶ 1} Three-C Body Shops, Inc. ("Three-C") appeals from the judgment on the pleadings entered in favor of Nationwide Mutual Fire Insurance Company ("Nationwide") by the Franklin County Municipal Court. For the reasons set forth below, we affirm.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

{¶ 2} Three-C filed a three-count complaint against Nationwide on February 25, 2016, asserting claims of breach of contract, unjust enrichment, and declaratory judgment. The complaint alleged that Three-C's customer, Mark Hairston, had brought a vehicle in for collision repair after being damaged in an accident. The customer had insured the vehicle with Nationwide under a policy that required the insurer to pay for

any reasonable and necessary repairs to bring the vehicle to its pre-accident condition, in exchange for a monthly premium paid by the customer.

{¶ 3} According to Three-C, it had entered into a contract entitled "Agreement and Repair Authorization" (the "Agreement") with its customer that authorized Three-C to repair the vehicle to its pre-accident condition, and had sent a copy of the Agreement to Nationwide. Three-C alleged that Nationwide was a third-party beneficiary of the Agreement, and that there was "privity of contract, rights, and obligations between Nationwide and Three-C." (Compl. at ¶ 15.) Three-C attached a copy of the Agreement to the complaint. The complaint also alleged that the customer's insurance policy imposed liability on Nationwide in favor of Three-C: "As the responsible insurance company, Nationwide is obligated to reimburse Customer for *all* of Three-C's repair charges involved in Three-C's repair of the Vehicle to its pre-accident condition pursuant to Customer's contract with Nationwide." (Emphasis sic.) (Compl. at ¶ 17.)

{¶ 4} Three-C had charged its customer $3,998.38 for the repair work, but Nationwide only paid $2,791.59. Accordingly, Three-C alleged that there was an "outstanding amount" due of $1,206.79, pursuant to an account statement attached to the complaint. (Compl. at ¶ 18-20.)

{¶ 5} The complaint further alleged that Nationwide "knew or should have known" that Three-C's customer had authorized Three-C to perform the work under the terms of the Agreement and would expect Nationwide to pay for the vehicle repairs. (Compl. at ¶ 16.) Thus, Nationwide had allegedly "exploited Customer's vulnerable position by refusing to pay Three-C for the work it performed on Customer's Vehicle, thereby placing Customer at legal risk." (Compl. at ¶ 25.) The complaint also alleged that the Agreement operated as a valid assignment of the customer's "rights, benefits, good faith, and other claims" against Nationwide to Three-C. (Compl. at ¶ 26.)

{¶ 6} Based on these allegations, Three-C asserted three claims against Nationwide in the complaint. In its breach of contract claim, Three-C alleged that Nationwide was a third-party beneficiary of the Agreement between Three-C and its customer, the Agreement had created privity of contract between itself and Nationwide, and Nationwide had breached the Agreement by refusing to pay for repairing the customer's vehicle. The breach of contract claim also alleged that Nationwide had

breached its contract of insurance with Three-C's customer by refusing to pay these charges. As a result, Three-C sought damages in the amount of $1,206.79. (Compl. at ¶ 27-35.)

{¶ 7} Second, Three-C asserted a claim entitled "unjust enrichment/quantum meruit." (Compl. at 5.) Under this claim, Three-C alleged that Nationwide knew that the customer had brought the vehicle to Three-C for repair and authorized it to repair the vehicle to its pre-accident condition pursuant to the terms of the Agreement. Three-C alleged that these repairs "conferred certain benefits upon Nationwide" that the insurer had retained, and that this was "unjust without payment to Three-C" in the amount of $1,206.79. (Compl. at ¶ 36-43.)

{¶ 8} In its final claim, Three-C sought declaratory relief in the form of a judgment or decree from the trial court as to the parties' "rights, obligations and liabilities" under both the Agreement and the customer's insurance policy with Nationwide. (Compl. at ¶ 45.) Three-C also alleged that it was entitled to damages as the assignee of its customer's claim, and that Nationwide had acted in bad faith and had "misrepresented a pertinent policy provision" to the customer by paying less than the full amount of the claim. (Compl. at ¶ 50.) According to Three-C, Nationwide had engaged in an "unfair trade practice" and was liable to Three-C for the amount of the customer's damages. (Compl. at ¶ 51.)

{¶ 9} Nationwide filed a motion for judgment on the pleadings under Civ.R. 12(C). In a decision filed on October 16, 2016, the trial court sustained Nationwide's motion. The trial court found that no contract existed between Three-C and Nationwide and rejected the argument that Nationwide was a third-party beneficiary of the Agreement, reasoning that the repairs were for the sole benefit of the customer, not Nationwide. Because the repairs did not constitute a benefit to Nationwide, the trial court also rejected Three-C's unjust enrichment/quantum meruit claim. The trial court also stated that the declaratory judgment claim had been insufficiently pled and granted judgment in favor of Nationwide on all counts. (Oct. 16, 2016 Decision & Entry.)

{¶ 10} Three-C has appealed, asserting four assignments of error:

> 1. The trial court erred as a matter of law when it dismissed Three-C's breach of contract claim by granting Nationwide's Civ.R. 12(C) Motion for Judgment on the Pleadings because

Three-C properly pled Nationwide is liable as an intended third-party beneficiary of the contract between Three-C and the vehicle owner.

2. The trial court erred as a matter of law when it dismissed Three-C's Unjust Enrichment/Quantum Meruit claim by granting Nationwide's Civ.R. 12(C) Motion for Judgment on the Pleadings because Three-C properly pled Nationwide is liable under the principles of Unjust Enrichment/Quantum Meruit.

3. The trial court erred as a matter of law and abused its discretion by dismissing Three-C's declaratory judgment claim because Three-C properly pled the elements of Declaratory Judgment.

4. The trial court erred as a matter of law because Three-C held a valid assignment of the insured's claim.

## II. STANDARD OF REVIEW

{¶ 11} We review a decision granting a motion for judgment on the pleadings under Civ.R. 12(C) under a de novo standard, "without deference to the determination of the trial court," as a motion for judgment on the pleadings "presents only questions of law." *Fontbank, Inc. v. CompuServe, Inc.*, 138 Ohio App.3d 801, 807 (10th Dist.2000), citing *Flanagan v. Williams*, 87 Ohio App.3d 768, 772 (4th Dist.1993), and *Compton v. 7-Up Bottling Co./Brooks Bev. Mgmt.*, 119 Ohio App.3d 490, 492 (10th Dist.1997). "When considering a Civ.R. 12(C) motion for judgment on the pleadings, a court must construe the material allegations in the complaint, along with all reasonable inferences to be drawn therefrom, in favor of the nonmoving party as true." *Ohio Mfrs. Assn. v. Ohioans for Drug Price Relief Act*, 147 Ohio St.3d 42, 2016-Ohio-3038, ¶ 10, citing *Rayess v. Educational Comm. for Foreign Med. Graduates*, 134 Ohio St.3d 509, 2012-Ohio-5676, ¶ 18. "Judgment is proper only if it appears beyond doubt that the nonmoving party can prove no set of facts entitling it to relief." *Id.*

## III. FIRST ASSIGNMENT OF ERROR

{¶ 12} In its first assignment of error, Three-C asserts that it was error to grant Nationwide judgment on the pleadings on its breach of contract claim.

{¶ 13} " 'A contract is generally defined as a promise, or a set of promises, actionable upon breach. Essential elements of a contract include an offer, acceptance,

contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration.' " *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, ¶ 16, quoting *Perlmuter Printing Co. v. Strome, Inc.*, 436 F.Supp. 409, 414 (N.D.Ohio 1976). "A meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract." *Id.* at ¶ 16, citing *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations*, 61 Ohio St.3d 366, 369 (1991). A legally sufficient breach of contract claim requires the plaintiff to plead "the existence of a contract, performance by the plaintiff, breach by the defendant and resulting damage to the plaintiff." *Flaim v. Med. College of Ohio*, 10th Dist. No. 04AP-1131, 2005-Ohio-1515, ¶ 12, citing *Nious v. Griffin Constr., Inc.*, 10th Dist. No. 03AP-980, 2004-Ohio-4103, ¶ 15.

{¶ 14} The complaint states that "Customer and Three-C entered into the contract," and Three-C attached a copy of the Agreement signed by the customer that identifies the parties to it. (Compl. at ¶ 28; Ex. A at 9.) Three-C alleges that it "performed its obligations under the Agreement," and an itemized list of the services performed on the customer's vehicle was attached to the complaint. (Compl. at ¶ 31; Ex. B.) Three-C also alleges a specific amount of damages, $1,206.79 for unpaid services. (Compl. at ¶ 35.) Thus, Three-C's breach of contract claim properly pleads the existence of a contract, Three-C's performance, and its damages.

{¶ 15} Three-C has not, however, properly alleged any breach by the defendant in this action. Three-C alleges that Nationwide breached the agreement "by refusing to pay Three-C's charges under the Agreement," but Nationwide is not a party to the Agreement. (Compl. at ¶ 34.) "It goes without saying that a contract cannot bind a nonparty." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002). *See also In re Estate of Vasko*, 10th Dist. No. 13AP-175, 2013-Ohio-4060, ¶ 4 (stating that "a non-party to the agreement or contract, cannot breach the alleged contract"). Because Nationwide was not a party to the Agreement, any allegation that Nationwide "breached" is without legal consequence.

{¶ 16} Three-C's theory of liability is that Nationwide may be sued for damages because it is a third-party beneficiary of the Agreement. (Compl. at ¶ 29.) In *Hill v. Sonitrol of Southwestern Ohio, Inc.*, 36 Ohio St.3d 36, 40 (1988), the Supreme Court of

Ohio adopted the following definition of a third-party beneficiary from the Restatement of

the Law 2d, Contracts, Section 302 at 439-440 (1981):

> (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either:
>
> (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
>
> (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.
>
> (2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

{¶ 17} As the language of the Restatement makes clear, the third-party beneficiary doctrine concerns a beneficiary's "right to performance." It recognizes that a right of the third-party beneficiary to sue for performance may exist, but only if the parties clearly intended the beneficiary to benefit from the performance of the contract. However, there is no mention of the third-party beneficiary having liability to either the promisor or promisee, only a "duty to him" owed by the contracting parties. *Id.* at Comment e. Thus, as articulated in the third-party beneficiary doctrine adopted by the Supreme Court, we discern no basis for imposing liability on an intended third-party beneficiary.

{¶ 18} Three-C cites three cases to support its argument that parties to a contract may impose liability on a third-party beneficiary, none of which are binding on this court or provide a reasoned basis for recognizing such liability.

{¶ 19} In *Ohio Match Co. v. Elm Grove Mining Co.*, 8th Dist. No. 7106 (Jan. 24, 1927), a mining company purchased a coal company that owed money to a creditor. In the contract to purchase the coal company, the mining company agreed to pay the debt to the creditor in shipments of coal, with half of the price of each shipment applied to the debt and the other half paid to the mining company in cash. The mining company sued the creditor over a price change caused by a wage increase specifically contemplated by the contract. The Eighth District Court of Appeals held that the creditor could be held liable under the contract: "Assuming that the [creditor] was not a party to the contract, it was

made for the benefit of the [creditor], and when it accepted the shipments of coal under the agreement made for its benefit, it obligated itself to pay the price stipulated in said agreement." *Id.* at 3. Thus, a series of affirmative acts demonstrating an intent to be bound by the terms of the agreement were crucial to the recognizing of the creditor's potential liability in *Ohio Match Co.* Furthermore, the *Ohio Match Co.* creditor had not only accepted the coal shipments directly from the mining company as payment on the coal company's notes, it had made "orders for coal and otherwise complied with the provision in regard to the price and payments." *Id.* at 2.

{¶ 20} In reality, the Eighth District's holding employs the rationale of an implied-in-fact contract, in which " 'the conduct of the parties or circumstances surrounding the transaction that make it clear that the parties have entered into a contractual relationship despite the absence of any formal agreement,' " to impose liability on the creditor. *Union Sav. Bank v. Lawyers Title Ins. Corp.*, 191 Ohio App.3d 540, 2010-Ohio-6396, ¶ 21 (10th Dist.), quoting *Fouty v. Ohio Dept. of Youth Servs.*, 167 Ohio App.3d 508, 2006-Ohio-2957, ¶ 56 (10th Dist.). " ' "In contracts implied in fact the meeting of the minds, manifested in express contracts by offer and acceptance, is shown by the surrounding circumstances which make it inferable that the contract exists as a matter of tacit understanding." ' " *Id.*, quoting *Waffen v. Summers*, 6th Dist. No. OT-08-034, 2009-Ohio-2940, ¶ 31, quoting *Hummel v. Hummel,* 133 Ohio St. 520, 525 (1938). For this reason, *Ohio Match Co.* does not support extending liability to a nonparty to a contract who does not perform or manifest any intent to be bound by its terms, such as Nationwide in this case.

{¶ 21} The other case from an Ohio Court of Appeals cited by Three-C is *Saum v. Moenter*, 101 Ohio App.3d 48 (3d Dist.1995). However, as in *Ohio Match Co.*, the defendant not only received a direct benefit from the plaintiff, but engaged in affirmative acts that amounted to performance under the terms of an agreement that he had not signed. In *Saum*, the defendant was a husband whose wife had obtained a loan from her parents before their marriage when the couple wanted to build a house. After the couple's divorce, the parents sued the husband for half of the balance on the loan. Not only did the mother's testimony indicate that the parents had intended to loan the money to both the husband and wife, but the husband had been "present when the check was deposited into

an escrow account, which had the sole purpose of paying building expenses," and loan repayment to the parents had been made from the couple's joint checking account. *Id.* at 53. Although the Third District described the husband as a third-party beneficiary, it also described him as "a party to the loan agreement" who had agreed to its terms. *Id.* at 52. This analysis is not entirely coherent because a third-party beneficiary is not a party to the agreement in question. As in *Ohio Match Co.*, the court's rationale is more akin to that of an implied-in-fact contract.

{¶ 22} In the final case cited by Three-C, *Resource Title Agency, Inc. v. Morreale Real Estate Servs.*, 314 F.Supp.2d 763 (N.D.Ohio 2004), a defendant was sued by two title agencies that had performed work under contracts entered into with a client of the defendant. The terms of the contract forbade the title agencies from contacting the defendant, who was not a party to it. The defendant sought to dismiss the case, arguing that it was not a party to the contract. The federal district court examined *Ohio Match Co.* and *Saum* before overruling the defendant's motion to dismiss: "While both of these cases are highly fact-specific and do not stand for the general proposition that intended third-party beneficiaries always assume liabilities under the contract, they illustrate that, in particular cases, a third-party beneficiary may be so held liable." *Id.* at 771.

{¶ 23} While we agree with the first clause of the district court's statement, we disagree with its conclusion. In both *Ohio Match Co.* and *Saum*, the courts imposed liability after determining that the purported third-party beneficiaries had directly accepted the benefits from a party to the agreement with acts akin to performance. In *Resource Title Agency, Inc.*, as well, the defendant "contact[ed] the Agencies directly to request services and to inquire as to the status of various real estate transactions," and had transacted directly with the plaintiffs in previous contracts. *Id.* at 768. None of these cases provides a reasoned foundation for extending contractual liability to intended third-party beneficiaries.

{¶ 24} Moreover, given that the Supreme Court has adopted language from the Restatement that refers only to "a right to performance in the beneficiary," and in no way recognizes the potential liability of the third-party beneficiary, we find that Three-C's argument would result in an unwarranted extension of the law that would expose non-contracting parties to possible liability. *Hill* at 40. The first assignment of error is

overruled. We note that, because we have rejected Three-C's theory that a third-party beneficiary may be held liable for a breach of contract to which it is not a party, it is unnecessary to determine whether Three-C properly pled facts that show that Nationwide was an intended third-party beneficiary of the Agreement.

## IV. SECOND ASSIGNMENT OF ERROR

{¶ 25} In its second assignment of error, Three-C argues that because it properly pled a claim for unjust enrichment/quantum meruit against Nationwide, it was error for the trial court to grant judgment on the pleadings on this claim.

{¶ 26} "A claim for quantum meruit shares the same essential elements as a claim for unjust enrichment, and both doctrines are equitable doctrines." *Pohmer v. JPMorgan Chase Bank, N.A.*, 10th Dist. No. 14AP-429, 2015-Ohio-1229, ¶ 20, citing *Garb-Ko, Inc. v. Benderson*, 10th Dist. No. 12AP-430, 2013-Ohio-1249, ¶ 26. Such a claim requires the plaintiff to prove: (1) a benefit conferred on the defendant by the plaintiff; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant that would be unjust without payment to the plaintiff. *Turturice v. AEP Energy Servs.*, 10th Dist. No. 06AP-1214, 2008-Ohio-1835, ¶ 24, citing *Hummel* at 527.

{¶ 27} Three-C argues that it properly pled a claim for unjust enrichment when it alleged that it had conferred a benefit on Nationwide by performing repair work that restored the customer's vehicle to its pre-accident condition, as such repairs fulfilled Nationwide's obligation to its insured to restore and insure the vehicle. (Appellant's Brief at 18.) However, Three-C performed no work for Nationwide. The work it performed, vehicle repair, conferred a benefit only on its customer. As the first element of an unjust enrichment claim states, the benefit must be " 'conferred by a plaintiff upon a defendant.' " *Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 2005-Ohio-4985, ¶ 20, quoting *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183 (1984). Three-C points to no action it took to describe the purported benefit conferred on Nationwide, other than the repair work it performed for its customer, who is not a defendant or a party to this case. The repair work may have a had the collateral effect of restoring the customer's vehicle to its pre-accident condition, but the connection between Three-C and Nationwide is too indirect to constitute a "benefit conferred" for purposes of a common law claim of unjust enrichment. *See Johnson* at ¶ 22 (upholding the dismissal of an unjust enrichment

claim brought by a plaintiff who alleged that she had conferred a benefit on Microsoft by purchasing a computer manufactured by Gateway with a preinstalled Microsoft operating system, stating that "[t]he rule of law is that an indirect purchaser cannot assert a common-law claim for restitution and unjust enrichment against a defendant without establishing that a benefit had been conferred upon that defendant by the purchaser"). Because Three-C's claim failed to describe a benefit it conferred on Nationwide to support its unjust enrichment/quantum meruit claim, the trial court did not err when granting judgment in Nationwide's favor on the claim. The second assignment of error is overruled.

## V. THIRD AND FOURTH ASSIGNMENTS OF ERROR

{¶ 28} We consider the third and fourth assignments of error together. In its third assignment of error, Three-C argues that the trial court erroneously dismissed its declaratory judgment claim because the claim had been properly pled. In its claim for declaratory relief, Three-C requested that the trial court declare the parties' respective rights and obligations concerning the assignment of its customer's insurance claim with Nationwide, as set forth in the Agreement. (Compl. at ¶ 44-54.) In the fourth assignment of error, Three-C asserts that the assignment of its customer's insurance claim was valid.

{¶ 29} The Agreement states that "Customer hereby assigns and transfers to Three-C all property loss claims, good faith claims, and all benefits and proceeds resulting therefrom as an insured party under Customer's automobile insurance policy." (Compl. at ¶ 31; Ex. A at 6.) However, Three-C's customer did not have the ability to assign its right because liability for the accident that damaged the customer's vehicle had not been established at the time the Agreement was signed. *See West Broad Chiropractic v. Am. Family Ins.*, 122 Ohio St.3d 497, 2009-Ohio-3506, ¶ 5 ("A person who has been injured in an accident but who has not yet established liability for the accident and a present right to settlement proceeds may not assign the right to future proceeds of a settlement if the right does not exist at the time of the assignment.").

{¶ 30} Three-C argues that the holding of *West Broad* does not apply because at the time the contract was signed Nationwide was identified as the customer's insurer and "a claim number had been assigned." (Appellant's Brief at 30.) The fact that the customer had an insurance policy and had made a claim with the insurer does not mean that liability for the accident that caused the injury to the car had been established. The

establishment of liability and "right to future proceeds of a settlement" in *West Broad* concerned a "prospective settlement or judgment" in a court of law, not the mere existence of an insurance policy or the insurer's administrative action of initiating the processing of a claim. *West Broad* at ¶ 1.

{¶ 31} Three-C also argues that *West Broad* does not control because in it the Supreme Court only answered a certified question of law without an opinion in which the majority joined. Even if it were not controlling, the appeal was from this court, which is not only bound by the holding of the Supreme Court, but by its own precedent. This includes the *West Broad* opinion that came to the same conclusion, *W. Broad Chiropractic v. Am. Family Ins.*, 10th Dist. No. 07AP-721, 2008-Ohio-2647.

{¶ 32} Furthermore, even if Three-C had properly stated a claim for declaratory relief concerning the purported assignment, it failed to join the customer as a necessary party, as required by R.C. 2721.12(A). The statute states that "when declaratory relief is sought under this chapter in an action or proceeding, all persons who have or claim any interest that would be affected by the declaration shall be made parties to the action or proceeding." *Id.* The requirement is jurisdictional. *Capital City Community Urban Redevelopment Corp. v. Columbus*, 10th Dist. No. 12AP-257, 2012-Ohio-6025, ¶ 15. Three-C could not invoke the jurisdiction of the trial court to decide a declaratory judgment claim without joining the party who signed the Agreement, the customer who purportedly assigned his right of recovery to Three-C. For this reason, the trial court did not err when dismissing the claim for declaratory judgment. The third and fourth assignments of error are overruled.

## VI. DISPOSITION

{¶ 33} Having overruled each of appellant's four assignments of error, the judgment of the Franklin County Municipal Court is affirmed.

*Judgment affirmed.*

TYACK, P.J. and BRUNNER, J., concur.

———————————